**JENNIE E. BURNS v. ORLANDO D. BURNS**

13 So. (2nd) 599         January Term, 1943
May 21, 1943         Division B

*J. W. Salisbury* and *W. F. Finch,* for appellant.

*Newman T. Miller,* for appellee.

BROWN, J.:

The appellant here as plaintiff below filed her bill of complaint for separate maintenance alleging therein a ground for divorce, to-wit: extreme cruelty on the part of the defendant, the appellee here. An order was made by the court granting temporary alimony in the sum of $25.00 per week. The defendant filed an answer to the bill denying the materials thereof and incorporated a counter-claim in the nature of a cross bill, as provided for by Section 35 of the 1931 Chancery Act, in which he prayed for divorce on the ground of extreme cruelty on the part of plaintiff. On motion of plaintiff, the court struck certain allegations of the counter-claim and also granted plaintiff's motion for better particulars as to certain portions of paragraph 4 of the counter-claim, which order was complied with. The plaintiff filed a reply to the counter-claim and the cause was referred to a special master to hear the evidence, rule upon its admissibility and report the same to the court with his findings of fact, conclusions of law and recommendations. The master held five hearings on different days, during which time quite a volume of testimony was taken and a number of exhibits filed, all of which were submitted to the court together with the master's report and recommendations. Exceptions were filed to the report by the plaintiff, but after argument of counsel the chancellor entered a decree following qnite closely the recommendations made by the special master. The chancellor found that the defendant had established by a preponderance of the evidence the allegations of his cross bill and decreed that the marriage between the parties be dissolved and granted a divorce *a vinculo matrimonii.* The court further ordered that plaintiff be permitted to continue to have and occupy the residence, which was owned by the defendant, for a period of six months, at the expiration of which time she should surrender the premises to the defendant. This decree was rendered on October 30, 1942 and therefore the six month period expired on April 30, 1943. Upon application of the appellant this court recently granted an order maintaining the status quo until the final disposition of the cause by this court. The chancellor further ordered that the defendant pay to the plaintiff

$35.00 per week for the first two months following the date of the decree, and $25.00 per week thereafter until one year after the effective date of the decree, at which time all payments to the plaintiff from the defendant should cease. The decree further provided that the defendant should pay to plaintiff's attorney the sum of $750.00 as his fee for representing the plaintiff, and also all court costs incurred by the plaintiff, including the reporter's fees for transcribing the testimony taken at the hearings, and that the defendant should reimburse plaintiff for a certain payment made by her on the mortgage encumbering the home then occupied by the plaintiff; also that the defendant should pay the special master the sum of $275.00 for his service as such. From this decree this appeal was taken.

While, as in most cases of this kind, there is considerable conflict in the testimony, a careful consideration of the record as a whole leads us to the conclusion that the decree of the court below should be affirmed. There is ample evidence in the record, introduced by and on behalf of the defendant husband, which, if believed, supports the final decree, even if we omit from consideration all irrelevant testimony and certain comments which were made by the master in his report with reference to the credibility of the testimony of the respective parties and their witnesses. The chancellor had the entire record before him and we certainly cannot hold that his conclusions therefrom were clearly erroneous.

Nor do we find any reversible error in the comment made by the master upon the demeanor of the respective parties while on the witness stand and their conduct during the various hearings. The report of the special master in this case, who was a practicing lawyer at the bar of the trial court, as well as of this court, while undoubtedly helpful, was only advisory to the chancellor who was of course not bound to follow the conclusions of law or fact of the special master, or his recommendations. The powers and duties of general and special masters are set forth in Sections 54 to 65 of the 1931 Chancery Act. The master should not hear evidence upon issues not made by the pleadings and if his report goes beyond matters referred to him, it is to that extent a nullity.

White v. Walker, 5 Fla. 478. But the master is not a servant of any party to the suit, nor a mere automaton. On the other hand, he is a highly important and responsible officer of the court, acting for and under the appointment of the court, and vested with considerable authority of a judicial nature by the statutes, and usually also by the order of the court appointing him.

It may well be that the special master in this case had authority to report to the court his observations and conclusions with reference to the credibility of the witnesses based upon their demeanor upon the stand and their conduct during the hearings. However, it is not necessary for us to decide that question. The chancellor was not bound by the opinion of the master in that regard, however reasonable that opinion might be, based as it was upon the observations of the master in that regard as stated in his report to the court. We might say, obiter dictum, that in view of the fact that the law has always accorded to juries in common law actions the authority to pass upon the credibility of the witnesses and to consider in that connection the demeanor of the witnesses upon the stand and the manner in which the testimony of the witnesses was given, it might not be unreasonable for us to hold, if it were necessary to rule on the point, that a master appointed by the court to hear the evidence and report it back to the court together with his conclusions on the facts, as well as the law, may comment on the demeanor and conduct of the witnesses where, in his opinion, these elements affected the degree of credibility which would be accorded to their testimony. However, while we have given due consideration to the master's report, we have based our conclusions on the question as to the sufficiency of the evidence to sustain the chancellor's decree upon the stenographic report thereof as taken before the master and the exhibits filed by the respective parties in connection therewith, all of which are reflected by the certified transcript filed here. We might say in passing, however, that the master's report is an interesting and well written document, which shows that he had carefully and seriously considered the case, and there is substantial evidence in the record to sustain the actual findings of fact as made by him.

While there was an effort made to prove that the defendant had a clandestine relationship with another woman, this effort completely failed.

There is no proof in this record of any immoral conduct on the part of either the plaintiff or the defendant. Nor is there any proof of any physical assaults or batteries of any kind by one against the other. But this Court has recognized that there is such a thing as mental cruelty, a course of conduct on the part of one spouse toward the other which can endanger the mental and physical health and efficiency of the other spouse to such an extent as to render further continuance of the marital relation intolerable and disastrous.

Where the evidence is conflicting and there is substantial evidence to support the chancellor's findings and decree, the same will not be set aside by this court, where, as here, it has not been made to appear that the chancellor's conclusions and decree were clearly erroneous. Such is the law.

The decree will therefore be affirmed, but in view of the fact that more than six months have elapsed since the decree was rendered, during which time the financial condition and ability of the parties may have changed, the court below is hereby authorized to reopen its decree insofar as the matter of the amount of alimony and the length of time it should be paid is concerned, and to make such modifications as changed conditions, if any, may render just and equitable. Likewise, that part of the decree allowing the plaintiff's wife to occupy the residence owned by the husband may be extended for such additional period, if any, as the court may determine to be just and necessary under existing circumstances. Our own order temporarily extending the time, during the pendency of this appeal here, is hereby ordered to terminate thirty days after the entry of this court's judgment on this appeal.

In response to motion filed in this court by counsel for appellant for the allowance of an attorney's fee for representing the appellant in this court on this appeal, our order is that appellee shall pay to appellant's counsel the sum of $375.00, being one half the amount allowed for the services of appellant's counsel in the court below where most of the

work in this case had to be done. The costs incurred in this court on this appeal are also taxed against the appellee, and the cost of the transcript reasonably incurred shall be assessed and taxed against him in the lower court after the filing of the mandate, as provided in our Rule 24.

Except as to the above modifications, the decree appealed from is hereby affirmed, and the cause remanded for further proceedings not inconsistent with the foregoing opinion.

BUFORD, C. J., THOMAS and SEBRING, JJ., concur.