102 So.2d 394 (1958)
DADE COUNTY, a political subdivision of the State of Florida, Faris N. Cowart, Charles F. Hall, Edwin L. Mason, John B. McLeod and Ralph A. Fossey, as the Board of County Commissioners of Dade County, Florida, Appellants,
v.
Frank W. TROMBLY, M.D., Appellee.
No. 58-19.
District Court of Appeal of Florida. Third District.
April 15, 1958.
Rehearing Denied May 23, 1958.
*396 Darrey A. Davis, County Atty., and Thomas C. Britton, Asst. County Atty., Miami, for appellants.
Fuller Warren, Miami Beach, and Harry Durant, Miami, for appellee.
HORTON, Judge.
The appellee, a licensed physician, practicing in Dade County, Florida, filed a complaint in the court below against Dade County and the members of the Board of County Commissioners of said county, seeking a declaratory decree and injunction to judicially ascertain and declare that he was qualified and entitled to major surgical privileges at Jackson Memorial Hospital, owned and operated by the appellants. The appellee contended that his training and experience qualified and entitled him to major surgical privileges at Jackson Memorial Hospital, which privileges had been denied him upon due application made in the years 1952 and 1955 and that such denials were arbitrary, capricious, unlawful and discriminatory. The appellants' answer generally denied the material allegations of the complaint and asserted that the appellee's applications for major surgical privileges had been rejected because he failed to meet the qualifications and standards set up by the medical board of Jackson Memorial Hospital and that such denials of privilege were not for the purpose of discrimination but to maintain a high quality of medical and surgical skill at this hospital.
The cause was referred to a special master in Chancery upon the joint motion of the parties to the cause. The special master heard the testimony and witnesses of the respective parties and rendered his report to the court, finding that the appellee had failed to prove that he was qualified to do major surgery and that the denials of such privilege by the appellants were not arbitrary, unreasonable or discriminatory. The special master recommended dismissal of the appellee's complaint. Objections to the master's report were filed on behalf of the appellee and the court sustained the objections and entered a final decree concluding the issues adverse to the findings and conclusions of the special master and requiring the appellant to permit the appellee to practice major surgery in Jackson Memorial Hospital. It is from this decree that appeal was perfected.
The appellant urges two grounds for the reversal of the final decree, i.e., (1) whether a hospital supported by public funds may require of a physician, as a condition to the use of its facilities for major surgery, standards higher than those required by the state for a medical license, and (2) whether the trial judge erred in disregarding the findings of the special master appointed by the consent of the parties when such findings are supported by competent substantial evidence. We conclude both questions should be answered in the affirmative and the decree reversed.
Jackson Memorial Hospital is owned and operated by Dade County and the Board of County Commissioners through a medical board responsible to the County Commissioners. This hospital is supported by public funds and paying patients. The by-laws of the medical staff of the hospital (approved by the Board of County Commissioners) set forth nine requirements for the appointment of a physician to the medical *397 staff. The appellants contend that appellee's qualifications were lacking in the following requirements:
"4. He must be a graduate of an approved medical school.
"5. He must have had an internship of at least one year in a hospital approved by the Medical Board.
"8. He must be competent in the line of work he proposes to do."
In considering the first question, we note that the appellee has conceded in his brief that a public hospital may require higher standards for major surgery than is required for a medical license but contends that such rule is not applicable to him. He instead urges that since the hospital is supported by public funds it could not arbitrarily exclude a licensed physician from the use of such hospital facilities in all surgery for the doctor's own private practice. In Green v. City of St. Petersburg, 154 Fla. 339, 17 So.2d 517, 518, Justice Terrell said:
"The law is settled in this country that a municipality may regulate and control the operation of a hospital provided by it and that in the exercise of such power, it may exclude those not shown to have met its requirements. Richardson v. City of Miami, 144 Fla. 294, 198 So. 51. There can certainly be no question about the power of a municipality to prescribe reasonable rules and regulations defining qualification to practice the medical profession in a hospital provided by it. Hayman v. City of Galveston, 273 U.S. 414, 47 S.Ct. 363, 71 L.Ed. 714; Harris v. Thomas, Tex.Civ.App., 217 S.W. 1068. See also City of Miami v. Oates [152 Fla. 21], 10 So.2d 721."
However, in line with the appellee's specific contention, the Supreme Court of Florida said in Bryant v. City of Lakeland, 158 Fla. 151, 28 So.2d 106, 109:
"It is not incumbent upon the city to maintain a hospital for the private practice of medicine nor does a physician have a constitutional or statutory right to practice his profession in the City's hospital. * * *
* * * * * *
"Even though the hospital be a public hospital petitioner as a physician had no right (per se) to practice in the hospital, it being a privilege rather than a right."
The record in this cause is devoid of any showing that the conditions or requirements laid down by the medical staff for the admission of a doctor to staff privileges or for major surgical privileges are unreasonable, discriminatory or arbitrary, or that they have been so applied to the appellee. However, the appellee does point out that the chief surgeon of Jackson Memorial Hospital had recommended another applicant for major surgical privileges who was not a graduate of an approved medical school and that therefore the requirements were arbitrarily applied to him. The testimony upon which this contention is based shows that the recommendation was never acted upon and the applicant did not obtain surgical privileges. Therefore, the appellee's argument that the requirements had not been uniformly adhered to would appear to be without merit.
In considering the second question urged by the appellants, we observe that the issues of fact raised by the pleadings were referred to a special master upon joint motion of both parties. The special master appointed in this cause is an able practitioner of many years and of wide experience. He had the opportunity of observing the witnesses and of analyzing the testimony as well as the pleadings. Under the circumstances existent upon the reference of this cause to the special master, his findings and conclusions were entitled to the same weight as the verdict of a jury in a common law action. They are presumptively correct and are not to be lightly regarded. Harmon v. Harmon, Fla. 1949, 40 So.2d 209; Florida National Bank & Trust Co. of Miami v. Brown, Fla. 1950, 47 So.2d 748, *398 749; Spencer v. Young, Fla. 1953, 63 So.2d 334; and Mahan v. Mahan, Fla. 1956, 88 So.2d 545, 547.
The final decree entered by the chancellor takes issue with the findings of fact and conclusions of the special master but nowhere does the chancellor point out that the master had misapplied any rule or principle of law or had failed to apply an applicable principle of law. In the absence of this, it must be assumed that the chancellor's decree was bottomed on the proposition that the master's findings were against the manifest weight of the evidence. To determine whether or not the master's findings and conclusions were against the manifest weight of the evidence, we must consider the three requirements which the appellants contend the appellee lacked. As to the first requirement, the testimony shows, and the master found, that the appellee had received a medical degree from a college which had never been accredited and which closed some three years after his graduation. Secondly, the testimony shows, and the master found, that the appellee interned in a hospital which was not accredited for the purpose of an internship program. Lastly, the testimony discloses, and the master found, that the surgical experience and skill of the appellee fell short of convincing "either friend or casual acquaintance" that he possessed the requisite qualifications for major surgical privileges. In addition, two of the three doctors whose names were submitted as references by the appellee to attest to his character and ability testified that in their opinion he was not qualified to practice major surgery. The third doctor admitted he was unfamiliar with the background and training of the appellee but felt that appellee was qualified to "perform surgery or at least some phases of surgery". Two other surgeons from other hospitals in Dade County where appellee claimed residency service testified that in their opinion he lacked the necessary qualifications to perform major surgery. We will not burden this opinion with a further delineation of testimony which appears in this record that throws doubt upon the appellee's experience and training to perform major surgery but observe that it was the burden of the appellee to prove by a preponderance of the evidence that he qualified under the requirements set out and that such requirements were being arbitrarily and discriminatorily applied to him. This burden, we conclude as the special master did, the appellee has failed to carry.
Accordingly, the decree appealed from is reversed and the cause is remanded to the court below with directions to enter a decree in accordance with the conclusions and recommendations of the special master.
Reversed and remanded with directions.
CARROLL, CHAS., C.J., and PEARSON, J., concur.